IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                                    )
TIFFANYE COSTELLO WESLEY,           )
                                    )
          Plaintiff,                )
                                    )
v.                                  )          Civil Action No. 08-0007
                                    )
ARLINGTON COUNTY, VIRGINIA,         )
                                    )
                                    )
          Defendant.                )
                                    )
```

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment, see Fed. R. Civ. P. 56(b), and Plaintiff's Motion to Strike and/or, In the Alternative, Motion for Leave to File Sur-Reply Brief. Plaintiff filed suit against Defendant alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. ("Title VII").

Plaintiff is a resident of Stafford, Virginia, and is currently a Lieutenant with the Arlington County Fire Department ("ACFD"). Defendant Arlington County, Virginia, is a county within the Commonwealth of Virginia and operates the ACFD as a public safety agency.

The ACFD and the Arlington County Human Resources Department ("HR") have established a promotions process to select Captains

from employees of the ACFD.  To fill the position of Captain, the ACFD first solicits applications from current employees.  The ACFD then administers a written examination and the 30 applicants with the highest score on the exam are eligible to participate in the Assessment Center.  HR uses the resulting scores from this Assessment Center test to compile a certified list of candidates to be considered by the Fire Chief for the promotion.

During the next phase of the promotions process, the Fire Chief conducts a roundtable discussion of the qualified candidates on the certified list.  These discussions include the Assistant Fire Chiefs and Battalion Chiefs (the "Chief Officers").  In addition to gathering information from this group of Chief Officers, the Fire Chief asks each Battalion Chief who supervised a candidate on the certified list to complete a "Promotional Information Sheet" about that candidate.  This Sheet collects information about the candidate's personnel file, education and training, fitness to perform in a higher ranking position, participation in any County or Department projects and the outcome of those projects.  When making the decision to promote a candidate to Captain, the Fire Chief uses information from all these sources and places particular weight on a candidate's consistency in performance and leadership, and experience in operations.

The Captain is a company officer usually in operations.  The

2

Captain supervises the crew of a vehicle such as a fire truck, ladder truck, heavy rescue vehicle, or medic unit by providing specific instruction and direction when the vehicle needs to respond to an emergency incident.  The Captain is responsible for the immediate evaluation of a fire, ground, or medical incident, and the development of the initial response strategy for that incident.  The Captain also directs staff and equipment on the scene to address the needs of the emergency and coordinate the work of incoming companies.  The Captain is responsible for making these decisions in a way that preserves the safety of the crew without delaying the operation, and without the need for supervision.

Plaintiff has been employed by the ACFD since October 30, 1994.  On February 28, 2003, the ACFD posted a job announcement for Fire/Emergency Medical Services ("EMS") Captain and Plaintiff applied for the position.  Plaintiff took the written examination for the promotion and participated in the Assessment Center.  The results of these tests qualified Plaintiff to be placed on the certified list.  Plaintiff was one of 20 candidates on this list which was sent to the Fire Chief for the next phase of the promotion process, namely, the series of roundtable discussions on each candidate.  This certified list was valid for a two-year period ending in October 2005.  Following the completion of the promotion process, Plaintiff was not selected for promotion to

3

Captain.  On August 18, 2005, Plaintiff filed a complaint with
the Equal Employment Opportunity Commission ("EEOC") alleging
that the ACFD committed employment discrimination in violation of
Title VII.  Plaintiff alleged that she was not promoted to the
position of Captain because of her race and gender.  The EEOC
made a cause finding against Defendant and, after a failed
attempt at conciliation, Plaintiff was issued a Right to Sue
letter by the United States Department of Justice and timely
brought this action.  The claim at issue alleges that Plaintiff
"was denied a promotion to Captain on several occasions" because
of her race and gender.

There is some dispute between the parties over the time-
frame of the alleged discrimination.  Plaintiff's EEOC filing
stated that the discrimination at issue occurred between October
2004 and June 15, 2005.  Plaintiff argues that this Court ought
to review this period and the period of time spanning 300 days
prior to the day Plaintiff filed her complaint with the EEOC.[1]
This time period spanned from October 2004 to August 18, 2005,
during which the ACFD promoted six employees to the rank of
Captain.  Defendant argues against review of any promotions that
occurred after June 15, 2005.

The ACFD promoted four employees to Captain between October

---

[1] Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 439 (4th
Cir. 1998).

4

2004 and June 15, 2005: Jason Lyon, John Delaney, Robert Halsall, Jr., and George Beall. All four of these employees had experience in operations ranging from 8.5 years to over 20 years. The roundtable discussions about these candidates revealed that Lyon had certification and performance experience in the hazardous materials unit; Delaney played a significant leadership role in the National Medical Response Team allowing him to manage complex personnel and technical situations; Halsall, who had over 20 years of operations experience, was a firefighter and Emergency Medical Technician ("EMT"), and a consistent performer in Advanced Life Support bringing valuable medical experience to his role as Captain; and Beall, a firefighter and EMT, had 8.5 years of a consistent record of excellence in operations and brought a level of maturity and trustworthiness to the position. All were praised for their leadership and communications skills, their pursuit of a variety of experience at the ACFD, and their consistently high performance on the job.

The ACFD promoted two employees to Captain between June 15, 2005 and August 18, 2005: Steven Vitalie and William Bennett. The roundtable discussions about Vitalie revealed that he was both a firefighter and EMT with over 18 years of operations experience before he was promoted to Captain on June 26, 2005. The Chief Officers found that Vitalie was always available and willing to do anything asked of him in the AFCD, and that he

demonstrated consistently good judgment, strong leadership, and superior skills and experience than others considered for the position.  Bennett's roundtable revealed that he was a firefighter and EMT, and was known for seeking out and attaining advanced certification in technical areas such as Hazardous Materials, Heavy Rescue and Tactical Extrication.  Bennett was lauded for his leadership, competence and job knowledge.

Plaintiff alleges that she was more qualified than five of these six individuals who were promoted, and "as qualified" as Steve Vitalie.

The promotion roundtable for Plaintiff revealed that she had just over six years of operations experience, less experience than any of the promoted candidates.  Even after Plaintiff was offered positions in operations, she chose to remain in non-operations positions.

The roundtable also revealed that Plaintiff was a poor trainer, and recruits reported that Plaintiff slept during class when she was supposed to be evaluating recruits in practical testing situations.  Recruits who had Plaintiff as an instructor arrived at their stations misinformed about certain techniques.  Plaintiff was not well respected as an instructor.

The Fire Chief also discovered in the roundtable discussions that Plaintiff lacked technical skills in key areas and, when admonished, lagged in her effort to gain these skills.  When

Plaintiff's supervisor discovered that Plaintiff was not competent in several key elements of her job as Firefighter, Plaintiff took nine months to raise her skills to an acceptable level.  When Plaintiff eventually returned to operations work, she was involved in three vehicle accidents in a very short period of time and lacked knowledge of the station's response area.  After 16 months, Plaintiff requested and was granted a transfer to the recruiting office, a non-operations post, in 2003.

Plaintiff did not have the type of certifications found to deserve additional weight in the promotions process such as Hazardous Materials, Heavy Rescue, and Advanced Life Support. Plaintiff had not participated in any inter-jurisdictional projects that the Fire Chief believed displayed leadership and decision-making abilities.  All six of the promoted candidates had at least one of these added qualifications.

Finally, the record shows that at the time Plaintiff was under consideration for promotion to Captain she was aware that she needed more time in operations, that several battalion chiefs thought that she was not qualified, and that some of the battalion chiefs thought that she lacked technical knowledge.

From 1999 to date, seven African-American candidates were on the various certified lists for promotion to Captain in the ACFD and five were promoted; a rate of 71.4%.  At the same time,

thirty-nine white candidates were on the various certified lists for promotion to Captain and twenty-eight were promoted; a rate of 71.8%. In the reinstated Captain II position[2], eight African-Americans were on the certified list and six were promoted; a rate of 75%. This compares to twenty-five white candidates on the list of which sixteen were promoted; a rate of 64%.

Since 1999, nine women have progressed to any certified list for any promotion to any rank within the ACFD and five were promoted.

Pursuant to Rule 56(c), this Court must grant summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, this Court views the facts in a light most favorable to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u> (<u>Liberty Lobby</u>), 477 U.S. 242, 255 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party then has the burden of showing that a genuine dispute as to any material fact does exist. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute

---

[2]   This position was created by the ACFD in 2007 to add manager positions between the Fire Chief and staff levels.

between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no genuine issue of material fact.   Liberty Lobby, 477
U.S. at 248.  "Rule 56(e) requires the nonmoving party to go
beyond the pleadings and by [his] own affidavits, or by the
'depositions, answers to interrogatories, and admissions on
file,' designate 'specific facts showing that there is a genuine
issue for trial.'"   Celotex Corp. v. Catrett, 477 U.S. 317, 324
(1986).

      Under Title VII, the plaintiff bears the initial burden of
proving a prima facie case of discrimination in which disparate
treatment is alleged.   To establish a prima facie case, plaintiff
must demonstrate that (1) she belongs to protected class; (2) she
was qualified for her job; (3) she suffered an adverse employment
action; and (4) she was treated differently from similarly
situated employees.   McDonnell Douglas Corp. v. Green, 411 U.S.
792, 800-04 (1973).   Once a prima facie is presented, the
defendant must then articulate some legitimate reason for the
disparate treatment.   Id.   The articulated nondiscriminatory
reason is "presumptively valid," and the plaintiff must then
demonstrate that the explanation is pretextual and "meet the
ultimate burden of proving intentional discrimination" by a
preponderance of the evidence.   Moore v. City of Charlotte, 754
F.2d 1100, 1106 (4th Cir. 1985).   The burden of proof never

9

shifts from the plaintiff in a Title VII case.  St. Mary's Honor
Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993).

It is well-established in the Fourth Circuit that to survive
a motion for summary judgment the non-moving party must produce
"specific facts showing that there is a genuine issue for trial
rather than resting upon the bald assertions of his pleadings."
Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir.
1985), overruled on other grounds by Price Waterhouse v. Hopkins,
490 U.S. 228 (1989).

In an employment discrimination case in Virginia, the proper
limitations period to a Plaintiff's claim is the 300 day period
leading up to the day the claim is filed.  Edelman v. Lynchburg
College, 228 F.3d 503, 506-507 (4th Cir. 2000).  Therefore, this
Court will consider all six promotions which occurred during the
300 days prior to August 18, 2005.

Plaintiff has failed to establish a prima facie case of
discrimination under Title VII since Plaintiff has not
demonstrated that she was qualified for the position of Captain.
A plaintiff cannot "establish her own criteria for judging her
qualifications for the promotion," but "must compete for the
promotion based on the qualifications established by her
employer."  Anderson v. Westinghouse Savannah River Co.
(Westinghouse), 406 F.3d 248, 269 (4th Cir. 2005).

Plaintiff's argument that she was qualified for the position

10

of Captain rests heavily on the point that she excelled on the written exam and in the Assessment Center.  However, this was only a portion of the promotions criteria established by her employer.  The role of the Captain required the ability to make a rapid series of decisions with life or death consequences, and to guide a team of firefighters and EMTs through those decisions. Because of this, the Fire Chief, using a process devised by the ACFD and Arlington County HR department, used the discussions and Candidate Sheets to better inform his understanding of the candidates' reputations as leaders, experience in operations, consistency in performance, and decision-making abilities under pressure.   This portion of the promotion process revealed that Plaintiff had a poor reputation as a leader, had less experience in operations than any of those promoted to Captain, and her performance and effort to improve her performance were inconsistent.

These discussions also revealed to the Fire Chief that Plaintiff had not garnered certifications in Hazardous Materials, Heavy Rescue, or Advanced Life Support, and had not participated in any inter-jurisdictional projects.  The Fire Chief believed that participation in these activities enhanced and showed evidence of significant leadership qualities and decision-making abilities.

The Fire Chief gave added weight to these qualifications in

the promotions process and, indeed, all six of the promoted candidates had at least one of these added qualifications. Plaintiff argues that she had several certifications which were not considered in the promotions process.  However, it is not the role of this Court to determine whether Plaintiff's certifications deserved added weight in the promotions process. This Court "[does] not sit as a super-personnel department weighing the prudence of employment decisions made by the defendants."  Westinghouse, 406 F.3d at 272.  It is sufficient that the Fire Chief established a reasonable standard for these certifications and followed that standard during this promotion process.[3]

Plaintiff also argues that she was "more than qualified" for the position since the job announcement for the position stated that candidates had to meet "minimal qualifications."  Plaintiff suggests that, based on this language, any minimally qualified candidate deserved a promotion to Captain of the Fire Department. Plaintiff makes a similar argument for her qualification when she suggests that since the written examination presented real-life scenarios, her proficiency on that exam was sufficient to qualify her for the promotion.  Both of these arguments ignore the fact

---

[3] Defendant provides sufficient rationale for the importance placed on specific types of experience and certifications when considering candidates for promotion to Captain.  Plaintiff does not dispute this rationale.

that the ACFD and the County's HR department created a more
thorough promotions process for this leadership position; a
process which included more than just a job announcement and a
written exam.  In fact, the job announcement stated that the
selection of Captains would be based on "Assessment Center
results, relevant experience, education and training, needs of
service, and any other appropriate job-related consideration."
Plaintiff's performance on the written exam, which placed her in
the "more than qualified" category, was not sufficient to entitle
her to the position of Captain nor was her performance unique.
All but two of the twenty applicants placed on the certified list
scored in Plaintiff's category.

      Plaintiff makes a variety of other arguments as to why she
was qualified for promotion to Captain.  These arguments include
her role in creating and filling the position of recruiter for
the Department, her total years on the job as opposed to her
years of work in operations, and positive performance evaluations
from the time period at issue.  All of these arguments are
disputed by Defendant, but even viewing these arguments in the
light most favorable to Plaintiff does not establish any material
issue for trial.

      First, as to Plaintiff's arguments that her role as
recruiter and her total years on the job ought to qualify her for
the position for Captain, it is not Plaintiff's opinion that

matters.  Rather, Plaintiff "must compete for the promotion based on the qualifications established by her employer." Westinghouse, 406 F.3d at 269.  Plaintiff's argument fails because her employer has already determined that experience as a recruiter and total years on the job are insufficient indicators of a candidate's ability to act as Captain.

Second, Plaintiff argues that positive comments in her performance evaluations evidenced that she was capable of being promoted to the role of Captain.  The Fourth Circuit has addressed this dynamic before in the Westinghouse case.[4]  In that case, the plaintiff in an employment discrimination case argued that improper discrimination was to blame for her non-promotion since she had received positive evaluations in her performance reviews.  In Westinghouse, the Fourth Circuit stated that

> "the performance evaluation is a review of an employee's performance in her current position, while the process of selecting a person for a promotion involves a consideration of how that employee will perform in a different position. In other words, the performance evaluation and the interview selection stage, which involves an analysis of how the applicant meets the core and functional competencies of the position that is open, are not interchangeable."

Westinghouse, 406 F.3d at 272.  The same is true for Plaintiff; while some of her performance evaluations were positive for her work in her current position, these evaluations did not establish

---

[4] Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005).

14

that she would be successful in the interview selection stage for the Captain position.  The two stages are not interchangeable.

For the reasons stated above, Plaintiff has not established that she was qualified for the position of Captain and therefore has failed to establish a prima facie case for employment discrimination.

Even if Plaintiff could show that she was qualified for the position of Captain, Plaintiff has failed to show that the nondiscriminatory reason Defendant provided for not promoting Plaintiff was actually pretext for underlying discrimination.

Defendant's articulated reason for the employment action is presumptively valid and, in order to overcome this presumption, Plaintiff must demonstrate that Defendant's rationale is pretextual and "meet the ultimate burden of proving intentional discrimination" by a preponderance of evidence.  <u>Moore v. City of Charlotte</u>, 754 F.2d 1100, 1106 (4th Cir. 1985).

Defendant's rationale for not promoting Plaintiff is that, based on job performance and relative qualifications, Plaintiff was not qualified for the promotion, and those who were promoted to the position were qualified.  "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996) citing <u>Texas Dept. of Comty. Affairs v. Burdine</u>

15

(<u>Burdine</u>), 450 U.S. 248, 258 (U.S. 1981).  The facts show that Plaintiff, by her own choice, spent less time in operations than all of the candidates promoted even when considering all six promotions as Plaintiff urges.  Plaintiff had none of the certifications considered valuable to a candidate seeking promotion to Captain, while all candidates promoted had at least one of those certifications.  At Plaintiff's roundtable, participants discussed that Plaintiff was not respected by her peers who lacked confidence in her ability to lead.  This was particularly harmful to Plaintiff's application for the critical leadership position of Captain.  This roundtable also revealed to the Fire Chief that Plaintiff lacked technical skills and the initiative to improve those skills.  Comparatively, those who were promoted during the time period that Plaintiff advocates were praised in their separate roundtables for their leadership and communication skills.  They were trusted by their peers.  All those promoted had consistently high performance and sought a range of experience in operations and in the ACFD as a whole. Simply put, those promoted excelled in the areas important for a promotion to Captain and Plaintiff did not.

Even if Plaintiff established that she were *as qualified* as those promoted, "the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria."  <u>Burdine</u>, 450 U.S. at 249.  Plaintiff

16

has failed to establish even this level of qualification, however, and even admits that she knew she needed more time in operations for the promotion. She also knew that several battalion chiefs believed she was not qualified for the promotion and that she lacked technical knowledge.

Plaintiff argues that Defendant's discriminatory purpose is evidenced by the numbers of racial minorities and women promoted in the Department in recent years. In her Amended Complaint, Plaintiff claims that since 1987 "only three female fire-fighters have been promoted to Captain and only a few African-Americans have been promoted to Captain over that twenty year period - none of whom were female." However, "[w]here special qualifications are necessary, the relevant statistical pool for purposes of demonstrating discriminatory exclusion must be the number of minorities qualified to undertake the particular task." City of Richmond v. J.A. Croson Co., 488 U.S. 469, 501-502 (1989). While the certified lists created by the ACFD create a broader pool than those qualified to be promoted to Captain, these lists do provide evidence that the ACFD has promoted African-American candidates from the certified list at an equal, if not greater, ratio than white candidates. For female candidates, since 1999, only nine candidates have advanced to the certified list and five of those candidates were promoted. These numbers are not sufficient to establish a discriminatory purpose and therefore do

17

not satisfy Plaintiff's burden of establishing intentional
discrimination by a preponderance of evidence.

As part of her argument that Defendant's rationale is
pretext for discrimination, Plaintiff asserts that since her
performance evaluations were positive and she was not promoted,
then a discriminatory reason must be the culprit for her non-
promotion.  Plaintiff also argues that since some participants of
her roundtable have different recollections of what was
discussed, then their reason for not promoting her is somehow
"shifting" and evidence of underlying discrimination.  "We cannot
require that different supervisors within the same organization
must reach the same conclusion on an employee's qualifications
and abilities."  Westinghouse, 406 F.3d at 272.  Indeed, this
Court's "sole concern is whether the reason for which the
defendant discharged the plaintiff was discriminatory.  Thus,
when an employer articulates a reason for discharging the
plaintiff not forbidden by law, it is not our province to decide
whether the reason was wise, fair, or even correct, ultimately,
so long as it truly was the reason for the plaintiff's
termination."  DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th
Cir. 1998).  Defendant has articulated a lawful reason for not
promoting Plaintiff, namely, that she was not qualified for the
position of Captain.  Plaintiff has failed to show by a
preponderance of evidence that this rationale was mere pretext

18

for underlying discrimination.

Plaintiff has not established a prima facie case of employment discrimination based on race or gender. Furthermore, even if Plaintiff had established this case, she has failed to show that Defendant's rationale for not promoting her was pretext for underlying discrimination. For the reasons stated above, Defendant is entitled to summary judgment.

Regarding Plaintiff's Motion to Strike and/or, In the Alternative, Motion for Leave to File Sur-Reply Brief, it appears to the court that there has been ample opportunity for briefing and this motion should be DENIED.

An appropriate Order shall issue.

/s/
_____

Claude M. Hilton
United States District Judge

Alexandria, Virginia
October 24 , 2008